WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00015-HZ |
| v. | **GOVERNMENT'S SUPPLIMENTAL SENTENCING MEMORANDUM** |
| **RICO ANTHONY RUSSELL RIGUTTO,** | |
| **Defendant.** | |

When the defendant failed to appear for sentencing, he breached the terms of the plea agreement by committing a new offense, obstructing or attempting to obstruct justice, and acting inconsistently with a complete acceptance of responsibility. Based upon defendant's failure to appear for sentencing the government now asks the Court to impose a sentence of 121 months' imprisonment, to be followed by a five-year term of supervised release.

The government submits this supplemental sentencing memorandum to address the effect of defendant's failure to appear for sentencing and the new issues he has raised in his supplemental sentencing materials, to include his request for a role reduction.

**Government's Supplemental Sentencing Memorandum**                                                      Page 1

A.   **Summary of Proceedings.**

On April 18, 2023, the defendant pled guilty to Count 1 of his indictment which charged him with Possession with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). The maximum sentence the Court may impose is a term of life imprisonment, fine of $10,000,000, and at least five years of supervised release. There is a potential mandatory minimum sentence of ten years' imprisonment. There is also a $100 fee assessment.

A Presentence Report (PSR) was completed and sentencing was scheduled to take place on March 5, 2024. Up until the scheduled sentencing date the defendant was on pretrial release and doing well. PSR ¶¶ 19-20. However, the defendant failed to appear for sentencing and an arrest warrant was issued. PSR ¶ 20a. The defendant remained on abscond status until he was arrested on August 2, 2024, by the U.S. Marshals. When the defendant was arrested the U.S. Marshals found him with a firearm as well.

Defendant's willful failure to appear for sentencing constitutes a new criminal act, in violation of 18 U.S.C. § 3146(a)(1) and 3146(b)(A)(i). The government has elected not to pursue new criminal charges arising from his failure to appear and believes defendant's conduct can appropriately be handled within the context of this sentencing hearing.

On August 5, 2024, defendant reappeared in federal court for his pretrial release violation, at which time his pretrial release was revoked and he was detained pending sentencing. *Id*. Defendant's willful failure to appear for sentencing constitutes a breach of his plea agreement. Plea Agreement ¶¶ 13, 20.

The government continues to believe that the facts underlying the defendant's count of conviction, his criminal history, and his personal history and characteristics are accurately laid

out in the PSR. The government agrees with the PSR guidelines calculations regarding the base offense level, premises enhancement, and firearm enhancement. PSR ¶¶ 35 – 37. However, the government believes defendant's willful failure to appear at sentencing is a breach of the plea agreement which in turn qualifies him for an Obstruction enhancement, and in turn adversely impacts his credit for Acceptance of Responsibility. The government also disagrees with defendant's contention that he is somehow only a minor player in his drug trafficking activities.

As the PSR notes, as a starting point, the defendant was an armed drug dealer possessing significant amounts of methamphetamine, heroin, and fentanyl for purposes of further distribution:

> On December 14, 2021, investigators utilized a cooperating defendant (CD) to coordinate a purchase of 3,000 counterfeit M30 oxycodone (fentanyl) pills from a Mexico-based drug distributor. At the appointed meeting place, investigators observed the defendant arrive to the location, however he did not leave his vehicle and was later observed departing the area without completing the sale. Investigators then executed a traffic stop on the defendant in his vehicle and a subsequent search revealed a package containing approximately 315 gross grams of counterfeit oxycodone (fentanyl) pills and a Glock 30S .45 caliber handgun outfitted with a "Glock auto sear," which allowed the handgun to function as a machinegun.
>
> Investigators then executed a search warrant of the defendant's residence where investigators located a safe inside a vehicle which contained 6,746 gross grams of methamphetamine and 2,949 gross grams of heroin. Within a gun safe inside a bedroom of the defendant's residence, investigators located nine handguns, an AR-15 style rifle and 12 gross grams of cocaine. Additionally, they located another safe inside an outdoor shed, which held 2,288 gross grams of counterfeit M30 oxycodone (fentanyl) pills, 6,689 gross grams of methamphetamine, and 12 gross grams of cocaine. These substances result in a combined total converted drug weight of 36,331.3 kilograms.

PSR Justification, page 2.

out in the PSR. The government agrees with the PSR guidelines calculations regarding the base offense level, premises enhancement, and firearm enhancement. PSR ¶¶ 35 – 37. However, the government believes defendant's willful failure to appear at sentencing is a breach of the plea agreement which in turn qualifies him for an Obstruction enhancement, and in turn adversely impacts his credit for Acceptance of Responsibility. The government also disagrees with defendant's contention that he is somehow only a minor player in his drug trafficking activities.

As the PSR notes, as a starting point, the defendant was an armed drug dealer possessing significant amounts of methamphetamine, heroin, and fentanyl for purposes of further distribution:

> On December 14, 2021, investigators utilized a cooperating defendant (CD) to coordinate a purchase of 3,000 counterfeit M30 oxycodone (fentanyl) pills from a Mexico-based drug distributor. At the appointed meeting place, investigators observed the defendant arrive to the location, however he did not leave his vehicle and was later observed departing the area without completing the sale. Investigators then executed a traffic stop on the defendant in his vehicle and a subsequent search revealed a package containing approximately 315 gross grams of counterfeit oxycodone (fentanyl) pills and a Glock 30S .45 caliber handgun outfitted with a "Glock auto sear," which allowed the handgun to function as a machinegun.
>
> Investigators then executed a search warrant of the defendant's residence where investigators located a safe inside a vehicle which contained 6,746 gross grams of methamphetamine and 2,949 gross grams of heroin. Within a gun safe inside a bedroom of the defendant's residence, investigators located nine handguns, an AR-15 style rifle and 12 gross grams of cocaine. Additionally, they located another safe inside an outdoor shed, which held 2,288 gross grams of counterfeit M30 oxycodone (fentanyl) pills, 6,689 gross grams of methamphetamine, and 12 gross grams of cocaine. These substances result in a combined total converted drug weight of 36,331.3 kilograms.

PSR Justification, page 2.

The amount of drugs seized from defendant's residence clearly indicated to investigators that they were possessed for purposes of further distribution. In his plea agreement, defendant also admitted the drugs were possessed for purposes of further distribution and the firearms were possessed in connection with his drug dealing:

> The defendant admits that on or about December 14, 2021, in the District of Oregon, he possessed, for purposes of further distribution, approximately 2,603 grams of counterfeit M30 pills manufactured with fentanyl, a Schedule II controlled substance, approximately 13, 435 grams of a mixture and substance containing methamphetamine, a Schedule II controlled substance, and approximately 2,949 grams of a mixture and substance containing heroin, a Schedule I controlled substance. Defendant also admits that he possessed multiple firearms, including a machinegun, in connection with his drug dealing activities.

Plea Agreement ¶ 6.

**B.     Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'... and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

    **1.     Undisputed Sentencing Guideline Calculations.**

Although the parties disagree about their ultimate sentencing recommendations and the applicability of some of the Guidelines, there are some basic Guideline calculations that are not in dispute which serve as a starting point.

///

### Drugs Possessed for Further Distribution

Based upon the quantity of drugs defendant possessed for purposes of further distribution the parties agreed that his initial Base Offense Level is 36, pursuant to U.S.S.G. § 1B1.3 and 2D1.1(a). Plea Agreement ¶ 8. The PSR also starts with a Base Offense Level of 36. PSR ¶ 35. This initial Base Offense Level is not in dispute.

### Firearm Enhancement

In his plea agreement the defendant also agreed that because he possessed a firearm during the course of his criminal conduct he is subject to a two-level upward adjustment, pursuant to U.S.S.G. § 2D1.1(b)(1). Plea Agreement ¶ 9. The PSR also applies this enhancement. PSR ¶ 36. The firearm enhancement is not in dispute.

### Premises Enhancement

Additionally, because defendant maintained premises for the purpose of distributing a controlled substance the parties agreed that he is subject to a two-level upward adjustment, pursuant to U.S.S.G. § 2D1.1(b)(12). Plea Agreement ¶ 10. The PSR also applies this enhancement. PSR ¶ 37. The premises enhancement is not in dispute.

**2.  Disputed Sentencing Guidelines.**

### Obstruction

Based upon defendant's willful failure to appear for sentencing the government believes defendant now qualifies for a two-level enhancement for obstructing or impeding the administration of justice, pursuant to U.S.S.G. § 3C1.1. The Sentencing Guidelines provide:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, **or sentencing** of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's

> offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (emphasis added).

In the commentary, the Sentencing Commission gave a "non-exhaustive list of examples of the types of conduct to which this adjustment applies" and explicitly included "willfully failing to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1, comment (n. 4(E)).

Here, defendant willfully failed to appear for sentencing and the U.S. Marshals had to go find and arrest him. The defendant was on abscond status for approximately five months. Accordingly, the Court should apply the two-level enhancement for Obstruction.

## Acceptance

At the time defendant initial changed his plea and entered a guilty plea he had appropriately demonstrated an Acceptance of Responsibility, pursuant to U.S.S.G. § 3E1.1. However, by willfully failing to appear for sentencing and engaging in obstructive conduct, he no longer automatically does. The Sentencing Guidelines, in explaining what does and does not qualify for Acceptance of Responsibility, specifically noted that:

> Conduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant **has not accepted responsibility for his criminal conduct**. There may, however, be extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1, comment (n. 4) (emphasis added).

The government still believes that defendant should qualify for some level of Acceptance of Responsibility because he did not require the government to prove the case against beyond a reasonable doubt at trial and in doing so he saved the Court and judicial system resources and time. Accordingly, the government believes defendant

**Government's Supplemental Sentencing Memorandum**                                                              **Page 6**

should only receive a two-level reduction in his offense level for Acceptance of Responsibility, as opposed to the full three levels initially recommended.

**Role**

Defendant asserts that he was somehow only a minor participant in the crime he committed and thus he should receive a role reduction, pursuant to U.S.S.G. § 3B1.2. The government has no issues with defendant raising the issue at this time, we simply disagree with this request based upon both the facts and law. The defendant was not some low-level drug mule ferrying controlled substances from California to Oregon who neither knew the scope of what he was doing or had no real financial interest in the drugs being transported. Rather, the defendant was a direct drug dealer – a "local supplier" – associated with another person. Although the other person in Mexico was the one who helped arrange the deal that led to defendant's arrest, the defendant was that person's "local supplier" entrusted with directly doing the deals. PSR ¶ 22. Furthermore, it was the defendant, as the "local supplier," who was storing a substantial quantity of drugs at his residence for purposes of further distribution. PSR ¶¶ 27 – 29. The defendant also possessed multiple weapons to protect his drug stash. *Id*. Here, the defendant was a drug dealer who is being held responsible **only** for the drugs he possessed for purposes of selling, he was not merely a drug courier playing a minor part in a vast conspiracy and thus he does not qualify for a role reduction.

In determining whether an individual qualifies for a role reduction the starting point is whether the defendant is somehow viewed as "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, comment (n. 3(A)). Here, defendant is not "substantially less culpable" in the criminal activity he pled to. The defendant pled to and is

being held responsible for only the drugs he personally possessed for purposes of further distribution – the drugs were his, they were stored at his house, he was guarding them, and he possessed them for purposes of further distribution.

The determination of whether a defendant qualifies for a role reduction is "based on the totality of the circumstances" and is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment (n. 3(C)). The Guidelines instruct the Court to consider the following "non-exhaustive list" in making a determination:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id*.

Here, the five factors counsel against the defendant's request for a role reduction. First, the defendant well understood the scope of the criminal activity, he was storing the drugs and he was selling the drugs. Second, the defendant as the "local supplier" directly participated in the planning or organizing of the criminal activity. While another person may have linked the informant with the defendant for the purposes of completing the deal, it was the defendant who was going to sell his drugs to the informant. Third, the defendant exercised decision making

authority, as the "local supplier" it was his drug deal to complete. Fourth, defendant had a large role in the participation and performance of the criminal activity. The defendant attempted to complete the drug deal and the defendant was storing significant quantities of methamphetamine, heroin, and fentanyl for purposes of further distribution. Fifth, the defendant also stood to benefit from the criminal activity. The defendant was a "local supplier" for someone and, as we know, drug dealers sell drugs to make money. And, by all appearances the defendant did very well selling drugs since the Investigators found approximately $75,315 in cash at his residence.

Just because the defendant worked as the "local supplier" for someone else does not qualify him for a role reduction. The defendant is not being held responsible for any and all drugs that the other person may be responsible for distributing, but rather he is only being held responsible for what he possessed for purposes of further distribution. The defendant was a well-armed and well-stocked drug dealer. He should not receive a role reduction.

   3.   **Government's Guideline Calculations.**

The government believes that the defendant's initial adjusted Offense Level for sentencing purposes is 40. Should the Court agree with the government's initial Sentencing Guideline Calculations, prior to any other adjustments, with an adjusted Offense Level of 40 and a Criminal History Category of I, defendant's suggested sentencing range is 292 to 365 months' imprisonment.

C.   **Government's Recommended Sentence.**

Pursuant to the provisions of 18 U.S.C. § 3553 and under the totality of the circumstances, the government asks the Court to sentence defendant to 121 months' imprisonment, to be followed by five years of supervised release. Such a recommendation, at the

end of the day, is the equivalent of three-levels higher than what the government was going to initially recommend prior to the defendant absconding supervision and willfully failing to appear for sentencing. Under the circumstances we believe it is fair.

The defendant, an extremely well-armed drug dealer, was responsible for the distribution of significant quantities of fentanyl, methamphetamine, and heroin – with fentanyl and methamphetamine being identified as two of the most incredibly addictive, deadly, and destructive drugs that are currently devastating the community.

- Fentanyl is the primary drug threat in Oregon and Idaho, seized by law enforcement agencies in counterfeit pill, and increasingly, in powder form, as the purity has consistently increased, and prices remain low. Fentanyl was identified as the primary cause of death either alone or with other substances in 51.5% of the drug-related deaths in Idaho during 2023 and 77% of the drug-related deaths in Oregon as of September 2023.

- Methamphetamine continues to impact community livability, contributing to overdose deaths and criminal activity including crimes against persons and property in the HIDTA (High Intensity Drug Trafficking Area) region. Methamphetamine was identified as the cause of death either alone or with other substances in 40% of the drug-related overdose deaths in Idaho in 2023 and 68% of the drug-related deaths in Oregon as of September 2023.

OREGON-IDAHO HIDTA 2025 THREAT ASSESSMENT, June 2024, at 6.

Additionally, the "presence of firearms among drug traffickers . . . create[s] an increased risk to law enforcement officers during suspect encounters and potentially impact local communities with the possibility of increased shooting incidents." *Id.* at 7.

Defendant's crime is extremely serious and but-for his mitigation information, which includes his initial post-offense efforts and the materials outlined within the PSR, defendant's

sentencing submissions, and previous filings with the Court, the government would be seeking a much higher sentence.

After evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 121 months' imprisonment is now reasonable. We ask the Court to impose it, to be followed by a five year term of supervised release.

At the time of sentencing we ask the Court to dismiss Counts 2, 3 and 4. There is an appeal waiver.

Dated: May 16, 2025.                                  Respectfully submitted,

                                                                              WILLIAM M. NARUS
                                                                              Acting United States Attorney

                                                                              /s/ *Scott Kerin*
                                                                              SCOTT M. KERIN, OSB # 965128
                                                                              Assistant United States Attorney